Advisement and proceed to the third and last of our cases this morning, Montague Minnifield v. Heath Boackle. May it please the Court. Travis Ramey for Heath Boackle. This is an interlocutory appeal of denial of qualified immunity in a Section 1983 employment case. The briefing You're also appealing or attempting to appeal the denial of summary judgment, aren't you? Correct, on qualified immunity, Your Honor. Yes, that's correct. Well, there's two different issues, the qualified immunity and then the denial of summary judgment with respect to the corporation. Your Honor, I will go ahead and concede that our notice of appeal does not list the city as an appellant in this case, and it specifically mentions the qualified immunity issue. So I'll go on and just concede that the city is not properly before the Court. is the question of qualified immunity as to the individual. That's correct, Your Honor. Okay. The briefing raises a few issues as to qualified immunity, obviously yielding to the Court's question. I'd like to focus on the question of the adverse employment action element and the discussion of qualified immunity of whether the adverse employment action is clearly established. As Your Honor, I'm sure aware of the test for when law is clearly established. It can't be established at a generalized level. You have to have law that dictates, compels, squarely governs, places the question beyond debate. There's case law from this circuit saying that officials don't have to be creative or imaginative in drawing analogies. The point being to protect, I think the line is to protect all but the plainly incompetent or those who knowingly violate the law. There are generally two ways to establish that. That's typically through a similar case or the obvious, the rare obvious clarity case. The Andy Harvey Rodriguez case that's cited in the briefs is a good example of how that analysis is supposed to work. The real problem, I think, as to the adverse employment action element of this case is that neither Mr. Minifield nor the district court ever did the proper analysis. What they did is commit what is sort of the cardinal sin of qualified immunity, and that's define the clearly established right at a very high generalized level as the rights to be free from discrimination and the right to be free from retaliation. The cases that Mr. Minifield cites in his brief largely define the right in that way. We don't dispute that there is a statutory right to be free from retaliation. We don't dispute that there is a statutory right to be free from discrimination. But that's too generalized a level to define the right. It's no different than defining the clearly established right as to be free from excessive force or to be free from being denied due process. What would need to be clearly established in this case is that a non-decision maker who fails to recommend an employee for a transfer to a position that pays less, that has different but not materially better job duties. Now, did it pay less? That is the evidence, Your Honor. Yes, it is. So it paid 5% less. There's no dispute about that. That's what the evidence shows, Your Honor. I understand that Mr. Minifield argues otherwise. But Mr. Boakle testified that the patrol canine position did not get 5%. Chief Roper testified to that effect. Mr. Hayes and Russell made the two officers who received the position testified they did not get the 5%. And in Minifield's deposition himself, it's document 57-1 at page 61 was asked the question whether the patrol canine position paid 5% more. And he said, not to my knowledge, I don't know. I don't think there is any substantial evidence that supports that the patrol canine position was entitled to the 5% premium pay. I'm sorry? I don't believe there is any evidence establishing that the patrol canine position did receive the 5% premium pay. The evidence is that it did not, in fact, receive the 5%. Was it lower? It was 5% lower, yes. How could it possibly be 5% lower if it's a patrolman that gets into the canine unit? Well, the evidence is that the motor scout position received a 5% premium, the position that Mr. Minifield held. If you want to imagine, 105 cents on the dollar is what it received. The TSA canine positions did as well because of the dog's bomb detection duties. But the evidence is that the patrol canine position did not receive that 5% premium pay. They got 100 cents on the dollar. So, of course, the guiding question here is what is an adverse action? For purposes of discrimination, we're talking about tangible adversity. Well, let me ask you this one question first. Are you asking us to review the facts that the court looked at and determined that the court was in error in saying that there were facts in dispute? No, you're wrong. Our argument is that taking the facts in the light most favorable for Mr. Minifield, it is not clear to the statute. So we're not weighing facts. We're taking a body of fact in a light most favorable to the non-moving party and asking when we measure that against clearly established law, whether or not your client was entitled to qualified immunity. Yes, Your Honor. As opposed to asking us to get involved in picking and choosing between the facts. That's correct, Your Honor. And with that in mind. If we were asked to do the latter, it would be clear we did not have and would not have jurisdiction on an interlocutory basis. Yes, Your Honor. That's correct. Now, I will qualify my answer by saying that under the, I think it's Cotterill v. Caldwell, in doing that analysis of what the appropriate summary judgment facts are, the court is entitled to accept the district court's conclusions, but it is not bound to accept the district court's conclusions about what the correct summary judgment facts are. Right. But what we are obliged to do is exactly the same thing the district court is obliged to do, which is to take the body of fact in a light most favorable to you and ask, and drawing all inferences in your favor, and ask when measured against clearly established law, whether or not you're entitled to qualified immunity. Yes, Your Honor. The correct analysis for this court is the same summary judgment analysis that the district court would have done. So to look at whether this is a clearly established issue, I think it's important to focus on some of the differences between the case law that's been cited. First of all, this is not a typical transfer case. If Mr. Bogle took an adverse employment action against Mr. Minifield on the basis of Mr. Minifield's race, would that violate a clearly established right? If I'm sure I understand your question, Judge Kelly, if Mr. Bogle took what is clearly established to be an adverse employment action based on retaliatory or discriminatory means, then yes, as long as it is clearly established to be an adverse employment action. Well, the law has long been clearly established that you can't take an adverse action on account of race. Simple as that. Your position is there's no clearly established law here that this would be an adverse action because he necessarily would have taken a pay cut. Well, that's one of the reasons it would not be clearly established that this is an adverse employment action. And again, I would refer back to other areas where qualified immunity maybe comes up more often. It's been long clearly established that you can't use excessive force to effectuate an arrest. But the correct analysis is not that. Do the facts of this particular arrest show that the officer would know that what he or she is doing is excessive force? If they're undisputed. Correct. That's because of the jurisdictional issue at this point. So the case law bears out, Your Honors, that not all transfers are adverse employment actions. Here we really have sort of the inverse. We have denial of a transfer. But transfers that are adverse are analogous to demotions. Is there any case out there in this circuit or before the Supreme Court of the United States which has held or even suggested that the failure to recommend for someone for a position where they would receive a pay decrease would constitute an adverse action? Judge, I'm not aware of such a case. Did they cite any? I'm not aware that they cited such a case. None of the cases as I read them talk about a pay cut position, which is almost tantamount to a demotion. Denial of a recommendation for that job is a materially adverse employment action. The district court based its conclusion on the supposed prestige of the patrol canine position. But again, the cases in this circuit are divided on whether prestige is sufficient. You have cases like Doe and Henson that say yes, but you also have cases like Davis, Dacoska, Trask, Cornell v. Brennan, the Mitchell case from just, I think, less than two months ago. Was there a jury question as to whether what occurred constitutes an adverse employment action? There are some cases that say, well, it is a jury question because of the various factors. But you also have some of these cases saying it's just not an adverse employment action. And since we're talking about a question of what is clearly established for purposes of prestige, there would have to be at minimum some clearly delineated test of when prestige falls on the violation side of the line and when it doesn't that Chief Boekel could have been aware of and applied. But none of these cases really lay out such a test. It almost becomes the old Supreme Court's obscenity analysis. The court just seems to know it when it sees it. And for purposes of qualifying immunity, that isn't good enough. That isn't enough to clearly establish what the law is. Beyond that, in the court's determination of what are the summary judgment facts, if it elects not to defer to the district court's findings for the purposes of summary judgment, being what I'm talking about. Was it your position that prestige is the only real issue here? The district court talked about prestige, which I don't believe there is sufficient evidence to support that the canine position was even more prestigious. I think the correct disposition is that it's really not. But the district court also focused on loss of job opportunities. But when it did so, it sort of amalgamated the analysis of what's a job opportunity and what's a job duty. On page, I think it's 8 of its Rule 59 order, it refers back to pages 25 and 26 of its summary judgment order and saying here's where I said that this was a loss of job opportunity. But the discussion there is about the duties of the various positions. And it's also the same evidence the district court cites. The district court referred to the canine position itself as a lost job opportunity. But if that were the case, Your Honor, every transfer case, whether it's a denial of a transfer or an involuntary transfer, is going to deal with the loss of one or more jobs. And if that's a lost job opportunity, every transfer case would be a materially adverse employment action. And the case law simply doesn't bear that out. Your Honor, my time is up. I'll save you time. Thank you so much. You have reserved three minutes for rebuttal. Good morning. Good morning. May it please the Court. My name is Patricia Gill and I have the honor of representing Officer Minifield in the lawsuit that he has filed against Sergeant Boakle. My outline started with a lot of the issues that the defendant has already conceded. So I will start with the adverse action and whether or not there is one. It's important to note that there are two causes of action that Officer Minifield has alleged against Sergeant Boakle. There is the race discrimination and then there is the retaliation. Both of them have different standards for what constitutes an adverse action. The first adverse action with the race discrimination is a material alternative. Stay a little closer to the microphone. I apologize. Thank you. It is a material altering of terms, conditions of employment that includes things such as loss of prestige or loss of job opportunity. With regards to the retaliation claim, it is any action that could potentially dissuade someone from filing an EEOC charge. Do you agree that there was a reduction in pay for moving to this canine position? I think that we have presented disputed facts on that issue. Sergeant Henri Pruitt testified that the canine patrol and the TSA canine groups were both specialty groups. I think it's the very first sentence in their brief. The defendant talks about the tactical unit involved a 5% increase in pay. So I don't think it . . . I thought, and you can help me with this, I thought the motor scout position got a 5% premium and he held that. Correct. The patrol canine position, not involving the bombs, but the patrol canine position did not get the 5% increase. Is that right or wrong? That is what the defendant says. But the defendant also says through testimony presented by the defendant that the tactical unit got a 5% increase in pay and the tactical unit was comprised of motor scouts, canine patrol, TSA canine, all those units. So there's disputed evidence of whether or not it involves a decrease in pay. Well, if there was no difference, are you relying entirely on the prestige that apparently goes with being a canine handler? I'm not relying entirely on prestige. It's a difference in job duties. The duties are completely different. It's also a foreclosure of job opportunities. And it's not just the foreclosed opportunity to be in canine patrol. It ultimately precluded him from becoming a TSA agent. Why would anybody want to become a TSA agent? The TSA canine position. The difference in those two positions are the canine patrol is a biting dog that goes and bites suspects that are being chased and apprehends those suspects, whereas the TSA bomb dog sniffs out bombs and detects them as it goes through luggage and things like that at the airport. So that position is the position my client originally signed up for. And the rules and regulations say when you enter the tactical unit, you sit down with your chief and you say which ones are your favored positions. TSA canine was his favorite position. And you start a career development plan to ultimately get you to that position. This decision to not let him be in canine patrol precluded him from being TSA canine forever. And the rule wasn't that you had to be canine patrol to begin with. That rule was changed after my client told, after they offered my client the fictitious dog that was dual purpose, the biting and bomb dog, that did not exist, they had no authority for, it wasn't in their budget, and my client said that's completely unacceptable. I want the TSA dog that I was promised. You should give Mr. Phillips the biting dog, I mean the fictitious dog, and give me the TSA dog. Well, after they had that conversation, that following week during the abbreviated handler's course, Sergeant Boeheckle tells my client, oh, well, now we're going to require people to take a biting dog before they are required to get, before they can accept a TSA canine job. So not only did he preclude him from being in the canine unit as a whole, he precluded him from ultimately receiving his favorite position, which without a doubt has a 5% increase. That is not disputed. So it's not only a complete difference in job duties, it's motor scout versus canine, it's also the loss of that job opportunity to ultimately be canine patrol, to be in the patrol unit, and then ultimately TSA canine, and it's also a prestigious position. And that is based not subjectively on my client's testimony, which the cases that opposing counsel brought up, I believe it was the Cornell versus Brennan case, it talked about it's not a loss of prestige, it's not an adverse action. However, that case involved a UPS worker who did not want to wear his company issued uniform every day. Let me ask the question this way and assume for the purpose of my question that there really was a 5% differential in the positions. You got a 5% increase, let's just assume, when you were a motor scout position, which he held during the relevant times in this appeal. And let's assume that you didn't get the 5% increase for this particular position. The patrol canine position didn't get the 5%, and so that if indeed he were to get that position, he would have had to take a pay cut of 5%. Just assume that for my purposes that the facts pretty clearly establish that. I understand you dispute that, but just take that as given. Is there any clearly established law out there that would have put him on notice, the officer, that this was an adverse action where there's some indication that there's a loss of prestige? There's a pay cut on the one hand and maybe subjectively there's a loss of prestige on the other. Is there anything that would have put an officer objectively on fair notice that that constitutes an adverse action? I don't think that there's law with this specific detailed fact. I don't think that's required. I think there is case law out there that says economic, you don't have to suffer an economic. I think that's clear. But what I'm asking is if in fact you will suffer an economic harm by getting the new job. On the other hand, the job has other benefits like prestige. So that an officer would have to weigh the one against the other, there are positives and negatives. Is there anything that would have clearly put an officer on notice? I think that there is. If there is, what can you point me to specifically because I can't find that? I am not aware of a case that talks about an opportunity where there's a decrease in pay. What I am aware of is there are cases that talk about foreclosed opportunities. Sure, and one could understand and that makes sense. I've been involved in panels that have said that. After all, if I'm losing possibilities, maybe it is adverse. But if I'm losing pay, well then it cuts in the other direction. And I'm simply asking we have that kind of arguably conflicting evidence on that issue. There's the minus and maybe arguably in some subjective sense, there's a plus. Is there anything that would have told an officer that this would be an adverse action? I mean, how is an officer to know if he says, well, look, I'm not giving him the job and in any event, he's going to lose 5% on it? This officer knew that the TSA canine patrol position had a 5% increase. This officer knew by not allowing him in this department, he would never have the opportunity to be in the same. But the patrol canine position at issue did not get 5%, right? That's assuming for purposes of this argument. Yes. We dispute that. Correct. I do not know of anything that talks about a decrease in pay. Everything talks about a foreclosed opportunity. In this situation, the foreclosed opportunity is the opportunity for TSA. Right. And that only applies to the race discrimination case. It does not apply to the retaliation case. The retaliation case, the burden is much more relaxed. And it's any conduct that could dissuade someone from filing a charge. That is a whole separate burden, a whole separate issue, and it's much more relaxed. And that was outlined in the Burlington case. And you really would have to look at Officer Boakle's conduct as a whole, which is why all the history is involved in the briefing. For instance, when Officer Mennefield filed his EEOC charge regarding the selection of Larry Phillips, a meeting was held. They all discussed his EEOC charge. And that's when they offered him the dual-purpose dog. That's when he changed the parameters that you had to do the canine patrol. The day after, Officer Boakle sent an angry email about, you know, if you're criticizing my selection process, talking about the Larry Phillips position. Then later that same week, Officer Mennefield attempted to send a grievance up the chain of command through Sergeant Boakle. Sergeant Boakle immediately turned around and said, I ain't fixing to do nothing with that. Then when the grievance was filed, it was a race discrimination grievance, which is attached to the record. He seeks approval from the Fraternal Order of Police, for which Sergeant Boakle is the president. That request was later tabled by the Fraternal Order of Police after his meeting with the chief about the discriminatory practices. Every time my client did something to assert his rights, Sergeant Boakle was turning around and doing something to thwart his ability to, A, assert his rights, and B, to be in that unit. He was changing the parameters. He changed the parameters from requiring, you know, you couldn't go straight to CSA canine. He changed, you know, he opened it up to other applicants. You know, when Mr. Mennefield was the only qualified applicant, you know, he didn't, the rules required him to list everybody that had applied and send it up to the chief and let the chief make a final selection. He didn't do that. All those things. I mean, he was foreclosing his ability to be in this unit. And I think it is arguable that the unit is more prestigious and the unit is a rarely posted position. He had waited two years to try to get the TSA job that's not part of this lawsuit. It wasn't until a year and seven months later that the three men that got this position, that we're for, got the position. And even then, the next posted position wasn't until 2015. Are you suggesting that any time somebody does not get a job that they'd like to have, that they have a claim? What I'm suggesting is the defendant seems to think that all lateral transfers, if there's no economic loss or economic gain, are legal. And if you could do that, then, I'm trying to figure out how I can put, if you assume that premise, then companies could completely segregate employees and put all the African-American employees in one unit and all the white employees in another unit and say it's perfectly legal. So you are seeking then, assuming that there is no disparity in the dollars involved, you're saying that any time I want a job that you have and you want the same job and I don't get it, I've got a claim, if I can suggest that it was done based on race. If it's done based on race, if it's done based on your prior compliance, it is illegal. All right. Unlawful. It sounds like a box of Pandoras to me. Well, if it was a situation where somebody filled out a job application and the application had checked the box, are you African-American or are you Caucasian? You check it, African-American, and you slide it into a slot. Nobody knows who you are, knows nothing about it. They sort it and they don't, they say, oh, we're not even going to consider the African-American applicants. We're just going to consider, that obviously would be illegal. Well, suppose they consider it and they say, well, Joe Blow is going to get it and not this fellow. And you say, well, wait a minute, I'm African-American, so therefore you have to consider me better than the other guy. Is that what we're looking at here? No. Here we have established facts to establish causation. We have established . . . Well, you've established that the white person got the job in each case. That's correct. You've established that your client was better qualified. At least I didn't get that out of the materials. We've established that my client was the only qualified applicant. Well . . . And the other fellows did not even meet the minimum standards required in the posting and that it would not be reasonable . . . Is that a factual issue for a jury to decide? It is a disputed fact, which is . . . Thank you. Yes. Thank you much, Counsel. Mr. Ramey, let me ask you a question at the outset. Where will I find in this record undisputed evidence that this position that he sought and he wasn't recommended for the patrol canine position did not get the 5% bump up that he otherwise had as the motor scout? Mr. Boakle testified to that effect. It's document 58-5 at pages 124, 142 to 143, and I think page 241. I have down here Chief Roper's testimony, document 49 at page 406. Hayes' deposition testimony, document 51 . . . I think time should be running, Carol. All right. At page 38. Rossmay's deposition, 51, document 51, page 110. Manyfield's deposition at document 57-1, page 61. The deposition of Mr. Pruitt that was referred to by my friend in her argument is, at least as cited in the brief, is document 58-3 at page 26. Mr. Pruitt was answering a question, and I'm going to quote from his testimony here, for the specialized units, for the motor scouts, and for the bomb technicians, there's a 5% increase of pay. There's also some on-call time for the canine TSA positions as well as for the patrol canines, and also there's on-call time for the rec constructionists. What does that mean? I don't think that says anything about . . . What does it mean on-call time? Bear with me. Is there any explanation, any further interrogation or answer that tells me what on-call time means? I'm not aware of any in this, Your Honor. I can supplement to that effect if the Court applies. Is there anything else in the record that bears on whether it's a 5% cut or not? That's all I have in my notes. That's the totality of what's been presented both by you and your colleague. As I know, standing here today, Your Honor, yes, that's correct. Okay. Another issue, there were some discussions of past issues. What evidence is there of diminished employment opportunities for not getting that position? If Your Honor is referring to the preclusion of the TSA canine position, the only evidence there is deposition testimony from Mr. Minifield in which he said that Boakle told him he was going to change the policy. Now, since the procedural posture of the case is what it is, we accept as factual that Boakle actually told him that. But it's also undisputed that Mr. Boakle is not a policymaker. He would not have had authority to make that policy. Only Chief Roper would have had the authority. Is there any evidence that Chief Roper actually made that policy change? None of which I'm aware, Your Honor. None in the record? There's no rules and regulations that I'm aware of in this record that would establish that. So the policy would have had to change before you could actually consummate the idea that there was something else that you might have gotten that was more attractive? I think that's correct, Your Honor. Again, I would ask the court to look at the evidence the district court cited to establish prestige. It deals with issues like the fact that there are just a few of these handlers, which can mean anything. I'm asking a question different from prestige. I'm asking whether there are other opportunities that you could have gotten if you had this position but didn't get it. That's different from prestige. Arguably. I'm not aware of any opportunities such as that the canine positions were promoted more frequently or things such as that. I'm not aware of anything like that associated with the canine position. And I think Your Honors have hit the nail sort of right on the head. Whether we're talking about discrimination or retaliation, since we're dealing with qualified immunity and the clearly established element, where is the authority that would have put Mr. Boakle on notice that this lack of a recommendation was an adverse employment action, whether for purposes of retaliation or discrimination, under either standard? And I haven't seen that case. I've looked for it. So the best I can say is that I don't think such authority exists. So Mr. Boakle, I would ask the court to reverse. Thank you both very much for your efforts. We'll take the issue under advisement. And this court is adjourned. All rise. Excuse me. Thank you.